IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: COLOPLAST CORP.
PELVIC SUPPORT SYSTEM
PRODUCTS LIABILITY LITIGATION                                    MDL No. 2387

---

THIS DOCUMENT RELATES TO:

*Barbara Herrera v. Coloplast Corp.*                    Civil Action No. 2:15-cv-01733

# MEMORANDUM OPINION & ORDER

Pending before the court is Defendant's Motion to Dismiss [ECF No. 19] filed by Coloplast Corp. ("Coloplast"), to which the plaintiff has responded [ECF No. 21]. Also pending is the plaintiff's Cross-Motion for an Order to be Relieved as Counsel [ECF No. 21]. For the reasons stated below, both motions are **DENIED**.

## I. Background

The case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse and stress urinary incontinence. In the seven MDLs, there are nearly 30,000 cases currently pending, approximately 140 of which are in the Coloplast MDL, MDL 2387.

In an effort to efficiently and effectively manage this MDL, the court decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all summary judgment motions, among other things), it can then be promptly transferred or remanded to the

appropriate district for trial. To this end, the court placed this and other cases in Coloplast Wave 4. Pretrial Order ("PTO") # 124, at 10 [ECF No. 8].

Managing multidistrict litigation requires the court to streamline certain litigation procedures in order to improve efficiency for the parties and the court. PTO # 134, for example, required plaintiff's counsel to meet and confer with counsel for defendant on or before August 9, 2017 to engage in good faith discussions about the possibility of settlement [ECF No. 17]. Plaintiff's counsel, however, did not comply with PTO # 134 in that they wholly failed to meet and confer with counsel for defendant. On this basis, defendant now seeks dismissal of the plaintiff's case with prejudice.

## II. Legal Standard

Federal Rule of Civil Procedure 37(b)(2) allows a court to sanction a party for failing to comply with discovery orders. *See* Fed. R. Civ. P. 37(b)(2) (stating that a court "may issue further just orders" when a party "fails to obey an order to provide or permit discovery"). Before levying a harsh sanction under Rule 37, such as dismissal or default, a court must first consider the following four factors identified by the Fourth Circuit Court of Appeals:

> (1) Whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–06 (4th Cir. 1977)).

In applying these factors to the case at bar, I must be particularly cognizant of the realities of multidistrict litigation and the unique problems an MDL judge faces. Specifically, when handling seven MDLs, containing thousands of individual cases in the aggregate, case management becomes of utmost importance. *See In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006) (emphasizing the "enormous" task of an MDL court in "figur[ing] out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality"). I must define rules for discovery and then strictly adhere to those rules, with the purpose of ensuring that pretrial litigation flows as smoothly and efficiently as possible. *See id.* at 1232 ("[T]he district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial."); *see also* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

In turn, counsel must collaborate with the court "in fashioning workable programmatic procedures" and cooperate with these procedures thereafter. *In re Phenylpropanolamine*, 460 F.3d at 1231–32. Pretrial orders—and the parties' compliance with those orders and the deadlines set forth therein—"are the engine that drives disposition on the merits." *Id.* at 1232. And a "willingness to resort to sanctions" in the event of noncompliance can ensure that the engine remains in tune, resulting in better administration of the vehicle of multidistrict litigation. *Id.*; *see also*

3

*Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) ("The MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively. This necessarily includes the power to dismiss cases where litigants do not follow the court's orders.").

### III. Discussion

Pursuant to PTO # 134, counsel for all plaintiffs identified in the exhibit attached thereto were directed to meet and confer with counsel for defendant on or before August 9, 2017 to engage in good faith discussions about the possibility of settlement. PTO # 134, at 1. This case was identified on Exhibit A to PTO # 134. *Id.* at 3.

According to defendant, plaintiff's counsel did not meet and confer with defendant's counsel because plaintiff's counsel was unable to contact their client. Therefore, no meaningful discussion about the possibility of settlement could take place. Accordingly, pursuant to PTO # 134, defendant now moves for dismissal of the plaintiff's case with prejudice.

In response, plaintiff's counsel state that they made numerous attempts to contact the plaintiff prior to the August 9th meet-and-confer deadline, all of which went unanswered. Plaintiff's counsel last spoke with the plaintiff on August 7, 2017, but the plaintiff ended the phone call abruptly without a resolution as to how to proceed with her case. Numerous attempts to contact the plaintiff since August 7 have all gone unanswered. Plaintiff's counsel believes that an irrevocable breach has developed between themselves and the plaintiff. Therefore, plaintiff's counsel request

4

leave to withdraw as counsel, and allow the plaintiff a reasonable opportunity to find other counsel or proceed *pro se*.

Applying the *Wilson* factors to these facts and bearing in mind the unique context of multidistrict litigation, I conclude that although recourse under Rule 37 is justified, the plaintiff should be afforded one more chance to comply with PTO # 134 before further sanctions are imposed.

The first factor, bad faith, is difficult to ascertain, given that plaintiff's counsel has not had recent contact with their client. This indicates a failing on the part of the plaintiff, who have an obligation to provide counsel with any information needed to prosecute their case. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 n.10 (1962) ("[A] civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit."). Furthermore, as set forth in PTO # 2, "[a]ll attorneys representing parties to this litigation . . . bear the responsibility to represent their individual client or clients." PTO # 2, at ¶ E [ECF No. 10], *In re Coloplast Corp., Pelvic Support Sys. Prods. Liab. Litig.*, No. 2:12-md-02387. This includes awareness of and good faith attempts at compliance with all PTOs and other court orders. The plaintiff nevertheless failed to comply. Although these failures do not appear to be callous, the fact that they were blatant and in full knowledge of the court's orders leads me to weigh the first factor against the plaintiff. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) ("While not contumacious, perhaps, this is a blatant disregard for the

deadlines and procedure imposed by the court, [and t]herefore, we conclude that the [plaintiffs] did not act in good faith.").

The second factor—prejudice caused by noncompliance—also leans toward the order of sanctions. Defendant did not learn of plaintiff's counsel's inability to contact their client until August 8, 2017—the day before the meet-and-confer deadline. Thus, defendant likely expended substantial time and resources prior to the deadline attempting to set up the court-ordered meeting. Furthermore, because the defendant has had to divert attention away from responsive plaintiffs and onto this case, the delay has unfairly impacted the progress of the remaining plaintiffs in MDL 2387.

The adverse effect on the management of the MDL as a whole segues to the third factor, the need to deter this sort of noncompliance. When parties fail to comply with deadlines provided in pretrial orders, a domino effect develops, resulting in the disruption of other MDL cases. This cumbersome pattern goes against the purpose of MDL procedure, and I must deter any behavior that would allow it to continue. *See* H.R. Rep. No. 90-1130, at 1 (1967), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1901 (stating that the purpose of establishing MDLs is to "assure the uniform and expeditious treatment" of the included cases).

Application of the first three factors demonstrates that this court is justified in sanctioning the plaintiff. However, application of the fourth factor—the effectiveness of less drastic sanctions—counsels against the relief sought by defendant. Rather than imposing harsh sanctions at this time, the court opts for a lesser sanction and allows the plaintiff one more chance to comply, subject to dismissal, upon motion by

6

the defendant, if she fails to do so. This course of action is consistent with PTO # 134, which warned plaintiffs of the possibility of dismissal upon failure to comply with the procedures set forth therein. *See* PTO # 134 ¶ 6.

Alternative lesser sanctions, such as the ones proposed in Rule 37(b)(2)(i)–(iv), are simply impracticable, and therefore ineffective, in the context of an MDL containing approximately 140 cases. The court cannot spare its already limited resources enforcing and monitoring sanctions that are qualified by the individual circumstances of each case, nor would it be fair for the court to place this responsibility on defendant. Therefore, considering the administrative and economic realities of multidistrict litigation, I conclude that affording the plaintiff a final chance to comply, subject to dismissal if she fails to do so, is a "just order" under Rule 37 and in line with the Federal Rules of Civil Procedure as a whole. *See* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). Furthermore, in order to aid the plaintiff in complying with this Order, plaintiff's counsel's request to withdraw is **DENIED**.

IV. Conclusion

It is **ORDERED** that Defendant's Motion to Dismiss [ECF No. 19] is **DENIED**. It is further **ORDERED** that plaintiff's Cross-Motion for an Order to Be Relieved as Counsel [ECF No. 21] is **DENIED**. It is further **ORDERED** that counsel for plaintiff must meet and confer with counsel for defendant on or before **January 2, 2018** to

engage in good faith discussions about the possibility of settlement. Failure to comply with this Order may result in dismissal upon motion by the defendant. Finally, it is **ORDERED** that plaintiff's counsel send a copy of this Order to the plaintiff via certified mail, return receipt requested, and file a copy of the receipt.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: December 1, 2017

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE